IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JAMES ANTHONY HUNTER | § | |
| v. | § | CIVIL ACTION NO. 6:23cv154 |
| OFFICER BOLLER, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff James Anthony Hunter, a former inmate of the Smith County Jail now confined in the Texas Department of Criminal Justice, Correctional Institutions Division, filed this civil action under 42 U.S.C. §1983 complaining of alleged violations of his civil rights during his confinement in the Smith County Jail. The case was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and (3) and Local Rule CV-72 of the Local Rules of Court for the Eastern District of Texas. As Defendants, Plaintiff named Officers Michael Boller, Dustin Taylor, and Justin Mitchell, jail officers for Smith County.

Plaintiff complained of two separate alleged use of force incidents occurring in the Smith County Jail. He claimed that on November 18, 2022, while he was being escorted from one part of the jail to another, with his hands cuffed behind his back, Officers Mitchell and Taylor deliberately pounded the crown of his head into the doors of an elevator and along its walls several times. He says that as a result, he required medical intervention, which revealed that he had spinal injuries ultimately requiring surgery.

On January 17, 2023, Plaintiff says that he was laying on his bed "fully demonstrating compliance with my hands behind my back and my feet crossed at the ankles," awaiting to be escorted from his segregation cell. While he was in that position, Plaintiff states that Boller struck

1

him in the neck with his fist and forearm more than once. According to Plaintiff, this incident required immediate surgical intervention.

After defense motions for summary judgment were denied, counsel was appointed to represent Plaintiff and the case was set for trial. Both parties waived a jury and requested a bench trial. After the parties consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c), the case was tried to the Court on January 12 and 13, 2026.

Findings of Fact

In a trial before the bench, the Court must find the facts specially and make conclusions of law. Rule 52(a), Fed. R. Civ. P. This Rule recognizes and rests upon the unique opportunity afforded the trial court judge to evaluate the credibility of witnesses and to weigh the evidence. *Inwood Laboratories v. Ives Laboratories*, 456 U.S. 844, 855 (1982).

In this case, the Court has examined the exhibits and considered the testimony of the parties and witnesses in the cause. The Court has also noted the demeanor of the parties as they appeared in the courtroom. After careful review of all the evidence presented, the Court has found the following as facts:

Plaintiff James Anthony Hunter was confined in the Smith County Jail as a pre-trial detainee. He had an extensive history of disruptive behavior, including damaging or destroying surveillance cameras, smearing feces and urine on windows or throwing it at jail personnel, self-harm requiring multiple trips to the hospital, inserting foreign objects into his penis or rectum, public masturbation, refusing to comply with orders, and other such actions. Jail officers were well aware of this pattern of behavior.

On November 18, 2022, Plaintiff was confined in cell 3F, a multi-inmate cell on the third floor of the Smith County Jail. Directly outside the cell door was an area known as the security vestibule or the "sallyport." This area led into the main hallway on the third floor. There was a

double door consisting of bars separating the cell from the sallyport, of which one of the doors slid to open.

At around 10:30 p.m. on that date, Officer Powers was inside the cell dayroom conducting count. Plaintiff approached the front of the cell to complain about his food and medication. He tried to push his way out into the sallyport, but Officer Wideman blocked him from doing so. Defendant Officer Mitchell arrived at the scene and ordered Plaintiff several times to go back into the cell, but Plaintiff refused. As Plaintiff tried to push past Wideman, Mitchell put his hand on Plaintiff's chest and pushed him back into the cell dayroom, allowing Powers to squeeze past Plaintiff out into the sallyport.

As Plaintiff continued to try to force his way out of the cell dayroom into the sallyport, Defendant Officer Taylor arrived. Plaintiff grabbed hold of the bars on the cell door and wrapped his leg around the gate in an effort to prevent being moved.

The officers were eventually able to pull Plaintiff off the door and place him on the floor. Taylor and Mitchell secured him in hand restraints and Plaintiff was escorted to the infirmary by Officers Mitchell, Velasquez, Cortez, and Sgt. Bradam. Officer Taylor did not assist in the escort to the infirmary and neither Mitchell nor Taylor, nor any of the other officers present, rammed Plaintiff's head into the door or walls of the elevator.

These facts were testified to by Officer Taylor, Officer Wideman, and Officer Mitchell by agreed deposition. These facts are also set out in the statements of Taylor, Wideman, Mitchell, Bradam, and Powers contained in Defendants' Exhibit 1, pp. 1-9. The Court found this testimony and these statements to be credible.

Plaintiff testified that he approached the door to ask for food, but never entered the sallyport. He said that while he was handcuffed behind his back, the officers lifted his arms up, causing him to have to lean over, and that they rammed the crown of his head into the steel doors and then again into the wall at the back of the elevator while escorting him. The Court did not find Plaintiff's testimony or written statements to be credible.

On January 17, 2023, Plaintiff was confined in 206, an individual housing cell. A Code Blue (medical emergency) was called because Plaintiff had showed an officer that he had a razor blade in his mouth. Defendant Officer Boller went to Plaintiff's cell and discovered that Plaintiff had covered the cell window in feces. Plaintiff had also damaged the camera in his cell so that officers could not see inside. Sgt. Rios and Officers Amador and Lindsay also came to the scene.

Plaintiff was ordered to give up the razor blade, but he refused. The officers decided to enter his cell to retrieve it. Boller was aware of Plaintiff's history of disruptive behavior and obtained a riot shield prior to entering the cell. The riot shield serves to protect both officers and inmates from direct contact resulting in hand to hand fighting and its use results in less injury to inmates.

Plaintiff was ordered multiple times by Boller and Amador to submit to hand restraints by putting his hands out of the food slot in the door, but he refused. Amador sprayed pepper spray into Plaintiff's cell in an effort to gain compliance, but Plaintiff continued to refuse. Boller, Amador, Rios, and Lindsay entered Plaintiff's cell, with Boller in the lead holding the riot shield.

When the officers entered the cell, Plaintiff was standing in the middle of the cell with his back toward the door, but with his head turned looking at the officers over his left shoulder. He swung his right arm around and threw feces over the riot shield, striking Boller and Amador in the face and head. He also struck the shield with his right arm. Boller continued to move forward with the shield, pushing Plaintiff down onto the bed. The other officers were able to put Plaintiff in hand restraints and he was taken out of the cell to the picket. Sgt. Rios took control of Plaintiff while Boller went to the clinic to be cleaned up and examined for injuries.

These facts were testified to by Officers Boller, Amador, and Lindsay, and are recounted in Officer Boller's written statement (Plaintiff's Exhibit 19). The Court found this testimony and statement to be credible.

Plaintiff testified that the officers entered his cell, left, and then re-entered. The second time they came in, he said that he was laying on his bunk in a compliant position and Officer Boller

assaulted him by striking him repeatedly on the neck with his fist and forearm. The Court did not find Plaintiff's testimony to be credible.

Legal Standards and Analysis

Because Hunter is the plaintiff in this lawsuit, he has the burden of proving his claims by a preponderance of the evidence. *Vogel v. American Warranty Home Service Corp.*, 695 F.2d 877, 882 (5th Cir. 1983). A "preponderance of the evidence" means the greater weight of the evidence; it is that evidence which, when weighed with that opposed to it, has more convincing force and is more probably true and accurate. If, upon any issue in the case, the evidence appears to be equally balanced, or if it cannot be said upon which side it weighs heavier, then the plaintiff has not met his burden of proof. *Smith v. United States*, 726 F.2d 428, 430 (8th Cir. 1984).

At the time of these incidents, Plaintiff was a pre-trial detainee in the Smith County Jail. The Fifth Circuit has explained that the claims of pre-trial detainees are classified based on whether they concern "conditions of confinement" or an "episodic act or omission." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999). Because Plaintiff's claims concern particular acts or omissions of a jail officer, they fall into the category of an episodic act or omission. *Id.*

In analyzing a use of force claim as an episodic act or omission, the court determines (1) whether the use of force was deliberate, and (2) if so, whether the use of force was objectively reasonable under the circumstances of the case, taking into account what the defendant knew at that time. *Acosta v. Williamson County, Texas*, slip op. no. 23-50777, 2024 U.S. App. LEXIS 20677 at *13-14, 2024 WL 3833303 (5th Cir. 2024), *citing Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2009). This determination of objective reasonableness is made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officers to temper or to limit

the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Wood v. Bexar County, Texas*, 147 F.4th 534, 550 (5th Cir. 2025), *citing Kingsley*, 576 U.S. at 397 *and Austin v. City of Pasadena*, 74 F.4th 312, 322 (5th Cir. 2023). The list is not exclusive, but simply illustrative of the types of objective circumstances potentially relevant to a determination of excessive force. *Id.*

In the November 18, 2022 incident, the preponderance of the credible evidence shows that Plaintiff attempted to force his way out of a cell dayroom into a security vestibule, refused multiple orders to stop doing so and return to the cell, and resisted forceful efforts by officers to gain compliance. No excessive or unreasonable force was applied. This Court and others have stated that where an inmate cannot be persuaded to obey an order, some means must be used to compel compliance because discipline is essential for the institution to function. *Amos v. Jefferson*, civil action no. 5:17cv195, 2019 WL 950367 (E.D.Tex., February 27, 2019), *aff'd* 861 F.App'x 596 (5th Cir. 2021) (upholding use of pepper spray on belligerent inmate who repeatedly refused orders), *citing Soto v. Dickey*, 744 F.2d 1260, 1270-71 (7th Cir. 1984); *Thomas v. Comstock*, 222 F.App'x 439, 442 (5th Cir. 2007); *Minix v. Blevins*, civil action no. 6:06cv306, 2007 U.S. Dist. LEXIS 30058, 2007 WL 1217883 (E.D. Tex., April 23, 2007) (inmates cannot pick and choose which rules to obey), *citing Meadows v. Gibson*, 855 F.Supp. 223, 225 (W.D. Tenn. 1994); *Sneed v. Lira*, civil action no. 09cv2583, 2011 U.S. Dist. LEXIS 151230, 2011 WL 6998202 (S.D. Cal., November 3, 2011) (upholding use of force against inmate who was yelling obscenities and refusing direct orders, and lunged at the guards). The preponderance of the credible evidence shows that in light of Plaintiff's behavior and the first, fourth, fifth, and sixth *Kingsley* factors, the Defendants' actions were objectively reasonable in light of what the officers knew at the time.

In the January 17, 2023 incident, the preponderance of the credible evidence shows that Plaintiff refused orders to turn over a razor blade he had in his cell. When officers came to retrieve it, he threw feces at them until being pushed onto the bed by an officer holding a riot shield. No excessive or unreasonable force was applied. The preponderance of the credible evidence shows

that the Defendant's actions were objectively reasonable in light of what the officer knew at the time.

## Qualified Immunity

Qualified immunity is an affirmative defense which shields public officials sued in their individual capacities from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Joseph on Behalf of Estate of Joseph*, 981 F.3d 319, 328 (5th Cir. 2020). The Fifth Circuit has summarized the law as follows:

> Qualified immunity shields government officials from civil liability in their individual capacity so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It protects 'all but the plainly incompetent or those who knowingly violate the law.' *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).
>
> Our qualified immunity inquiry is two-pronged. *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020). First, we ask whether the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. Second, we ask whether the right was 'clearly established.' *Id*. We can analyze the prongs in either order or resolve the case on a single prong. *Id.*

After explaining that a right is "clearly established" only if it is sufficiently clear that every reasonable official would have understood that the defendant's conduct violated that right, and that there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that the conduct is definitively unlawful, the Fifth Circuit went on to state:

> When an official raises qualified immunity on summary judgment, as Sheriff Castloo did here, the plaintiff bears the burden of showing that the defense does not apply. *See Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020). To meet that burden, the plaintiff must present evidence, viewed in her [i.e. the plaintiff's] favor, satisfying both qualified immunity prongs by showing that the defendant (1) violated a constitutional right (2) that was clearly established at the time of the defendant's conduct. *See id*.

*Cunningham v. Castloo*, 983 F.3d 185, 190-91 (5th Cir. 2020); *Byrd v. Harrell*, 48 F.4th 343, 346 (5th Cir. 2022) (when an official has asserted qualified immunity, the burden shifts to the plaintiff to rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly

established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct). Conclusory allegations are insufficient to overcome the qualified immunity defense. *Williams-Boldware v. Denton County, Texas*, 741 F.3d 635, 643-44 (5th Cir. 2014).

The right of a pre-trial detainee to be free from objectively unreasonable force was clearly established at the time these incidents occurred. However, Plaintiff has wholly failed to meet his burden of showing that the defense does not apply because the preponderance of the credible evidence demonstrates that no constitutional violation occurred. Instead, the evidence shows that the force used was a reasonable response under the circumstances and was proportionate to the need.

The Fifth Circuit has held that it is proper to submit the question of qualified immunity to the finder of fact. *See Presley v. City of Benbrook*, 4 F.3d 405, 409-10 (5th Cir. 1993). Accordingly, the Court finds as a matter of law that the Defendants have established their entitlement to the defense of qualified immunity.

## Conclusions of Law

Based on the above factual findings, made by a preponderance of the credible evidence pursuant to Rule 52(a), F. R. Civ. P., the Court makes the following conclusions of law:

1. The Defendants did not use excessive force upon the Plaintiff James Anthony Hunter on November 18, 2022.

2. The Defendants did not violate any other clearly established constitutional rights of the Plaintiff James Anthony Hunter on November 18, 2022.

3. The Defendants did not use excessive force upon the Plaintiff James Anthony Hunter on January 17, 2023.

4. The Defendants did not violate any other clearly established constitutional rights of the Plaintiff James Anthony Hunter on January 17, 2023.

5. The Defendants are entitled to the defense of qualified immunity from suit.

## Plaintiff's Previous Litigation History

Plaintiff James Anthony Hunter has filed at least five other lawsuits in the Eastern District of Texas. None of these have been successful; on the contrary, evidence offered in these other cases highlights his penchant for disruptive or aggressive behavior. *See, e.g.*, *Hunter v. Velasquez, et al.*,

civil action no. 6:23cv582 (E.D.Tex., dismissed July 3, 2025, currently on appeal) (evidence showed that Hunter had his cell camera covered, concealed blades and sharp objects on his body, and had to have gas used on him because he would not comply with orders); *Hunter v. Anthony, et al.*, civil action no. 6:24cv35 (E.D.Tex., September 3, 2025, appeal dismissed for want of prosecution) (Hunter was taken to the emergency room after an episode of self-harm and then was pepper-sprayed when he tried to rip off the bandages he had just received, before the transport van had even left the hospital parking lot).

<u>Plaintiff's Behavior at Trial</u>

On the second day of trial, Plaintiff was transported to the courthouse but refused to come out of the holding area and appear in court. The Court dispatched his attorney to speak to him, and various security personnel spoke to him, but Plaintiff resolutely refused to come to court. The Court heard the final witness, Captain Martin, in Plaintiff's absence, but has not considered his testimony in determining the case.

After some time, the Court was informed that Plaintiff had cut himself or reopened an old wound, and was asking to be allowed to come back to court to address the presiding judge personally. The evidence was closed by this time, and given Plaintiff's behavior on day 2 in the holding cell, after consultation with the U.S. Marshals, the court determined it would be a security risk to allow Plaintiff to reenter the courtroom. However, in the interests of justice, the court provided a live feed to Plaintiff so he could watch the closing arguments from his cell. Once the proceedings had concluded, officials of the Texas Department of Criminal Justice had to summon a special response team to extract Plaintiff from the holding cell, which was done without further incident.

The Supreme Court has stated that while a court's inherent powers must be exercised with restraint and discretion, a primary aspect of these inherent powers is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991).

As a general rule, this power is confined to instances of bad faith or willful abuse of the judicial process. *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990).

A plaintiff's refusal to appear in court for the trial of a lawsuit which he himself filed plainly demonstrates bad faith and willful abuse of the judicial process. *See, e.g., Tubby v. Allen*, civil action no. 6:16cv972, 2019 U.S. Dist. LEXIS 99633, 2019 WL 2452308 (E.D.Tex., June 12, 2019) (defendant's actions including failure to answer counsel's calls or emails, failure to appear at a court-ordered deposition, refusal to accept court orders sent through the mail, and refusal to respond to the plaintiff's motion for sanctions and entry of default amounted to willful conduct justifying the imposition of sanctions); *McDonald v. Bellsouth Telecommunications Inc,*, 130 F.App'x 685 at *1 ("willful and intentional disregard of required appearances for depositions" justified imposition of sanctions). It does not require prior notice for a litigant to be aware that refusal to appear for one's own trial manifests such bad faith and willful abuse. Ultimately, Plaintiff compelled multiple defendants to conduct discovery and litigate his claims for a period of many months, caused the Court to devote extensive resources to consider and rule on his motions and otherwise manage the litigation of his claims, triggered the appointment of counsel to represent him, and demanded the time and presence of the defendants, counsel, witnesses, security staff, and the Court's own time and resources for a multi-day trial in which *he then willfully refused to participate.* It is difficult to imagine a course of action more abusive to the litigants or the judicial process.

In addition, Plaintiff's conduct was aggravated by his actions in self-harm and refusing to exit the holding cell, requiring the presence of both emergency medical technicians and a special response team from the Texas Department of Criminal Justice. This appears to simply continue a pattern of behavior amply documented in the evidence before the Court.

Such behavior has no place in a civilized society, much less in the halls of the courthouse. The U.S. District Court for the District of Columbia has explained as follows:

> Litigating a case in federal court is a privilege that requires conformance with the rules, see Fed. R. Civ. P. 1 (federal rules of procedure are "construed and administered to secure the just, speedy, and inexpensive determination of every

action and proceeding"); Fed. R. Civ. P. 11(b), and it also requires the pursuit of litigation positions with the utmost good faith, even if those positions are self-interested or zealously advocated. Hence, there is simply no place in any court for the behavior that the plaintiff has engaged in throughout this litigation. In determining what type of sanction is appropriate to both punish and deter the plaintiff's conduct, the Court is mindful of the D.C. Circuit's admonition that "a district court may not rely on its inherent power to impose a sanction of either default or dismissal without explaining why lesser sanctions were likely to be ineffective."

*Slate v. American Broadcasting Companies, Inc.*, 941 F.Supp.2d 27, 51-52 (D.C.C. 2013); *cf. Taylor v. Hayes*, 418 U.S. 488, 503 (1974) (reversing a contempt conviction imposed upon a lawyer for improper trial conduct, but observing that "behavior of this nature has no place in the courtroom, which, in a free society, is a forum for the courteous and reasoned pursuit of truth and justice.")

The Court has carefully considered the appropriate sanctions for Plaintiff's demonstrated bad faith and willful abuse of the judicial process. Dismissal of the action at this stage of the proceeding is not appropriate because the case is ripe for decision on the merits. Monetary sanctions are of little use in dealing with an indigent party proceeding *pro se*; however, as the Fifth Circuit has observed, no one, rich or poor, is entitled to abuse the judicial process. *Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir. 1975).

In *Flores v. United States Department of Justice*, civil action no. 5:20cv198, 2021 WL 1196268 (E.D.Tex., March 30, 2021, *appeal dismissed*), the Hon. Robert Schroeder, United States District Judge, ordered as follows:

> It is further ORDERED that the Court shall accept no further lawsuits from the Plaintiff Eric Flores unless such lawsuit is filed by a licensed attorney enrolled to practice in the Eastern District of Texas and upon payment of the full filing fee at the initiation of the case. Any new lawsuit received from the Plaintiff which does not meet both of these conditions shall be returned by the Clerk of Court or discarded, at the sole discretion of the Clerk. It is further ORDERED that a copy of this Order shall be sent to the Administrator of the Sanctions List for the Eastern District of Texas.

*See also Kohute v. National Rifle Association*, civil action no. 6:24cv475 (E.D.Tex., January 29, 2025) (sanction order by the Hon. Jeremy Kernodle, United States District Judge, requiring further filings to come from a licensed attorney); *In re: Ola Mae Allen*, civil action no. 6:82cv49 (E.D.Tex., February 9, 1993) (sanction order by the Hon. William Wayne Justice, United States District Judge,

requiring further filings to come from a licensed attorney); *Williams v. United States Court*, civil action no. 6:23cv355, 2023 WL 5944285 (E.D.Tex., September 12, 2023) (sanction order from the Hon. J. Campbell Barker, United States District Judge, requiring further filings to come from a licensed attorney).  A similar sanction is appropriate in this case.  It is accordingly

**ORDERED** that based on the above findings of fact and conclusions of law, made in accordance with Rule 52, Fed. R. Civ. P., judgment is entered in favor of the Defendants in this lawsuit and against the Plaintiff James Anthony Hunter.  It is further

**ORDERED** that the Plaintiff shall take nothing on his lawsuit and that said lawsuit is **DISMISSED** with prejudice.  It is further

**ORDERED** that the Court shall accept no further lawsuits from the Plaintiff James Anthony Hunter, TDCJ-CID No. 02510100, unless such lawsuit is filed by a licensed attorney enrolled to practice in the Eastern District of Texas and upon payment of the full filing fee at the initiation of the case. Any new lawsuit received from the Plaintiff which does not meet both of these conditions shall be returned by the Clerk of Court or discarded, at the sole discretion of the Clerk. Alternatively, Plaintiff may file a new lawsuit only upon seeking and obtaining permission from the Court to do so.  Any new lawsuit Plaintiff submits without an attorney must be accompanied by a motion setting out the claims in the lawsuit and demonstrating good cause to be allowed to pursue it.  Failure to comply with these requirements may result in the dismissal of the lawsuit without further proceedings.  It is further **ORDERED** that a copy of this Order shall be sent to the Administrator of the Sanctions List for the Eastern District of Texas.  Finally, it is

**ORDERED** that all other motions which may be pending in this lawsuit be and hereby are **DENIED**.

So ORDERED and SIGNED this 21st day of January, 2026.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE